# EXHIBIT 1

IN THE CIRCUIT COURT OF GREENBRIER COUNTY, WEST VIRGINIA

AMANDA THARP, as parent and natural guardian of
NATHAN THARP, minor and PATRICK
THARP, minor;

     PLAINTIFFS,

vs.

                                  Docket No. 12-C-265
                                  Div.
                                       (R)

GENERAL ELECTRIC CORPORATION,
a corporation;

     DEFENDANT.

---

## ORIGINAL COMPLAINT

COMES NOW Plaintiff, AMANDA THARP, as natural guardian for NATHAN THARP,

minor and PATRICK THARP, minor, by and through her attorney of record, Bruce L. Freeman

and files this Original Complaint against the Defendant, GENERAL ELECTRIC

CORPORATION, a corporation.  In support of this Original Complaint, the Plaintiff states as

follows:

### PARTIES, JURISDICTION AND VENUE

    1.    At all times referenced herein, including at the time of the incident, the Plaintiff,

AMANDA THARP, was an adult resident citizen of Greenbrier County, West Virginia, and is the

biological mother and natural guardian for NATHAN THARP and PATRICK THARP.

    2.    At all times referenced herein, including at the time of the incident, the Plaintiff,

NATHAN THARP, a minor, was a resident of Greenbrier County, West Virginia, and brings this

suit through his mother and natural guardian, AMANDA THARP.  At the time of the injury on

which this suit is based, NATHAN THARP., was approximately one (1) year and (9) months of

EXHIBIT

1

age.

3.      At all times referenced herein, including at the time of the incident, the Plaintiff, PATRICK THARP, a minor, was a resident of Greenbrier County, West Virginia, and brings this suit through his mother and natural guardian, AMANDA THARP. At the time of the injury on which this suit is based, PATRICK THARP., was approximately three (3) years and (3) months of age.

4.      Defendant, GENERAL ELECTRIC COMPANY is a foreign corporation organized under the laws of the State of New York, and is authorized to do business in the State of West Virginia. Said Corporation has purposely done acts or consummated transactions in the State of West Virginia from which Plaintiff's cause of action arises. The Defendant, GENERAL ELECTRIC COMPANY, is in the business of designing, manufacturing, distributing, marketing, and selling freestanding gas and electric range ranges for residential use. GENERAL ELECTRIC COMPANY knowingly distributes its products into the chain of commerce in West Virginia, derives economic benefit from the sale of its products in West Virginia, conducts business in West Virginia, and derives significant revenue as a result of the distribution of products in West Virginia. Defendant, GENERAL ELECTRIC COMPANY, designed, manufactured, marketed, sold, and distributed the freestanding electric range which is the subject of this action, namely a General Electric freestanding electric range, Model J BS03 V1WH, with Serial Number MM137503G. A photograph of the model and serial plate of the range in question is attached hereto as Exhibit "A". A photograph of the General Electric range is attached hereto as Exhibit "B".

5.      On or about December 31, 2010, the General Electric freestanding electric range in question was substantially in the same condition as it was when it left control of General

Electric Company or was in such a condition as was reasonably foreseeable given its age and the expected environment of its use, General Electric Company has had an opportunity to view, inspect, photograph, and test the subject range since the incident in question and prior to the time this Complaint was filed.

6.    The incident which gave rise to this lawsuit occurred in Rainelle, Greenbrier County, West Virginia, on December 31, 2010.

7.    The range in question tipped on December 31, 2010 as a result of weight or force being placed or exerted upon the open oven door by one or more of the minor children.

8.    The hazard of range tipping caused by small children placing weight or exerting force on an open oven door was known, or by the exercise of reasonable care should have been known to the Defendant prior to the date the range made the basis of this lawsuit was manufactured.

9.    GENERAL ELECTRIC COMPANY knew, at the time it sold the range in question, that a freestanding electric range like the range in question, without a properly installed anti-tip device, was capable of being tipped if small children exerted sufficient force or placed sufficient weight upon an open oven door.

10.    GENERAL ELECTRIC COMPANY knew, at the time the range in question left General Electric's possession when it was sold by them, that the range presented an unreasonable risk of serious injury or death to small children if the anti-tip device designed to be used with the range was not delivered with the range, was not properly installed, or the rear leveling leg of the range was not properly slid into proper position after the anti-device was properly installed.

11.    The hazard of range tipping was a latent hazard unknown to the minors or the adult Plaintiff.

12.    The minor children, given their age, are incapable of negligence as a matter of law.

## STATEMENT OF FACTS

13.    On December 31, 2010, James Tharp, father of the minors, was cooking noodles on the General Electric freestanding electric range, Model J BS03 V1WH, Serial Number MM137503G located at 729 Railroad Ave., Rainelle, Greenbrier County, West Virginia.

14.    The range, which was being used by Mr. Tharp on the date of the injuries set out above, was re-installed in their residence by Mr. Tharp after it had been removed and set aside for a period of time in the same location and manner from which it was removed.

15.    The freestanding electric range involved in the incident made the basis of this lawsuit was designed, manufactured, marketed, supplied, sold, and distributed by the Defendant, GENERAL ELECTRIC COMPANY.

16.    Mr. Tharp was unaware at the time of the injury and at the time the range was reinstalled that the GE electric range, if not properly installed with an anti-tip bracket, could cause serious injury or death to children if weight or force was applied to an open oven door by small children.

17.    The GE electric range, as installed, constituted a latent hazard which was not known or knowable to Mr. Tharp or the minor children.

18.    As Mr. Tharp was cooking in the kitchen, he turned around momentarily to throw some trash away.

19.    One of the two minors, PATRICK THARP and NATHAN THARP, opened the oven door.

20.    Mr. Tharp discovered that the two minors had somehow opened the oven door of

the range and it appeared that the children were about to exert force or place weight on the open door.

21.     Mr. Tharp from the corner of his eye saw that the General Electric freestanding electric range suddenly started to tip forward towards PATRICK THARP and NATHAN THARP.

22.     Mr. Tharp was able to partially catch the General Electric freestanding electric range; however, as the freestanding range was tipping, the pot that had been placed on the back burner of the cook top slid off the cook top and the boiling hot liquid contents spilled, causing severe burn injuries and damages to the minor children as set out herein with more particularity.

23.     The electrical burner element that had been heating the pot of liquid also was dislodged when the range tipped and it actually left a burn mark on the floor where it fell after the range tipped.

24.     The mechanism of injury (a range tipping event whereby small children place weight or exert force to an open oven door causing a freestanding electric range to tip and having the heated contents from items in the pots or pans used to cook unintentionally spill onto the unsuspecting small children when a range is tipped) was actually known to General Electric at the time the product was sold, and for more than two decades prior to that date.

## STRICT LIABILITY OF DEFENDANT GENERAL ELECTRIC COMPANY

25.     At all times relevant to the Complaint, the defendant, GENERAL ELECTRIC COMPANY, was in the business of designing, manufacturing, marketing, distributing, or otherwise selling electric range ovens for residential use.

26.     The General Electric freestanding electric range, Model J BS03 V1WH, Serial Number MM137503G was defective and/or unreasonably dangerous at the time it was designed, manufactured, distributed and sold by GENERAL ELECTRIC COMPANY.

27.    The General Electric freestanding electric range, Model J BS03 V1WH, Serial Number MM137503G failed to protect the minors from foreseeable burn injuries and damages caused when a range is tipped by children placing weight or exerting force on an open oven door, because General Electric, at the time the product was sold, knew or should have known that the anti-tip devices it was allegedly supplying with its freestanding ranges were habitually not being installed by persons installing such products, were installed improperly, or the ranges they designed, manufactured and sold, were often not properly slid into the anti-tip device rending the devices practically useless in preventing range tipping events.

28.    GE failed to provide adequate and reasonable protection against range tipping and purposelessly used a design (supplying ranges with anti-tip brackets) that they knew or by the exercise of reasonable care should have known were not being used with significant frequency. They chose a design choice that relied upon a floor mounted anti-tip device they knew from prior history was not typically used or were improperly installed. GE also knew, or by the exercise of care, was actually aware that on-product warnings and instructions for use they used on the front and back of the range were inadequate or ineffective. GE knew at the time this product was sold that without a properly installed anti-tip device the freestanding ranges they sold presented an unreasonable risk of serious injury or death to small children and elderly adults.

29.    When GE was supplying anti-tip brackets with its 21-inch freestanding ranges in the 1970's (floor bracket – drawing number 725A248 349554) persons in the product service organization went to an apartment to examine the installation to find out whether the brackets supplied with GE ranges were being used and discovered they were not. According to prior interrogatory answers of General Electric Company – "A field survey indicated the bracket was not being used". The bottom line of this survey according to Richard Prucha, whose deposition

was taken on May 3 1985, "was that it was not being used enough to address the risk that underwriter's standard was designed for. And therefore we should use other methods".

30.    General Electric knew before Feb 18, 1986 (as partially demonstrated by United States Patent #4,669,695):

    a. Many free-standing structures, particularly in the field of home appliances, are provided with access openings in a side wall and a closure member, or door, for access opening. This includes freestanding ranges;

    b. Most often the door is hinged at its bottom edge and pivots substantially 90 degrees to an essentially horizontal position;

    c. When in the open position, the door may be at a height from several inches to a foot above floor level;

    d. This height makes it possible for even a small child, or children, to climb or sit upon the door;

    e. The weight of the child, or small children, may be sufficient to shift the center of gravity of the appliance to an extent whereupon the structure will tip over; and,

    f. This obviously could result in damage to the appliance and, more importantly, serious injury to the child or children.

31.    Despite General Electric's actual experience with the habitual non-use of anti-tip brackets it supplied with freestanding ranges in the 1970's, and the critical need to rely on inherent stability of a range to meet UL stability requirements without using an anti-tip bracket that it discovered in the real world environment of use was not being used, General Electric returned to the use of anti-tip brackets to prevent or eliminate range tipping and meet newly proposed stability requirement for freestanding electric ranges. General Electric reintroduced anti-tip brackets as a design choice to meet UL 858 requirements for stability in the late 1980's.

32.    In the mid to late 1980's Underwriters Laboratories had proposed implementing a voluntary stability standard that set performance criteria for stability a freestanding range would have to meet to be labeled a UL approved product. According to General Electric "All GE,

Hotpoint and RCA free-standing, slide-in and drop-in ranges manufactured since the Fall of 1988 include an anti-tip device. This bracket is essential to the safe operation of the range. It provides protection when excess force or weight is applied to an open oven door." Rather than designing its freestanding ranges inherently stable (without using an anti-bracket that its real world experience had demonstrated was likely not to be used) to ensure that two small children under the age of 7 no matter how hard they try could not tip a freestanding range, General Electric consciously and deliberately opted to use an anti-tip bracket to meet the stability performance criteria of UL 858. General Electric knew at the time it adopted this design choice, and knows now, that in order for its free-standing ranges (like the range made the basis of this lawsuit) to meet Underwriters Laboratories (UL) safety standards for stability (abnormal use), as it has designed and manufactured these ranges, the anti-tip devices it claims it supplies with its ranges must be properly installed. General Electric knew, or by the exercise of reasonable care should have known, that anti-tip devices it supplied with its freestanding ranges were often not being installed. Studies (both formal and informal) created by or for General Electric (or other range manufacturers or major appliance retailers) prior to the date the product made the basis of this lawsuit was manufactured and sold, as well as those since that date, have corroborated significantly heightened percentages of anti-tip brackets not being used or improperly installed. At the time the range made the basis of this lawsuit was manufactured and sold, General Electric knew, or by the exercise of reasonable care should have known about United States Patent #5,624,098 filed April 11, 1995. GE knew, or by the exercise of reasonable care should have known, at the time the range made the basis of this lawsuit was manufactured and sold:

> a. Several types of appliances, such as ranges, dishwashers, refrigerators, etc., are subjected, from time to time during their use, to user applied loads in a downward direction outside of a perimeter defined by the supporting feet of the appliance (for example when an oven door is opened, a user may apply a downward force

on the open door);

b. Downward force if sufficiently applied to an open oven door may cause a range to tip;

c. If, in the case of an oven door, a hot pan or the hot contents of a hot pan, is on the cook top of a freestanding range, the pan and its contents can slide off the cook top - burning a user (small children or elderly adult);

d. A drawback of the anti-tip device(s) being supplied by General Electric to reduce or eliminate the risk of a freestanding range tipping when force is applied by a user to an open oven door at the time the freestanding range made the basis of this lawsuit was sold, is that often they are not installed, or if installed, the anti-tip device may not be installed properly;

e. A further drawback to the anti-tip devices(s) being supplied by General Electric to reduce or eliminate the risk of a freestanding range tipping when force is applied by a user to an open oven door, at the time the range made the basis of this lawsuit was sold, is if the anti-tip device is installed properly, often the device is not engaged with the appliance when the appliance is positioned;

f. A further drawback to the anti-tip devices(s) being supplied by General Electric to reduce or eliminate the risk of a freestanding range tipping when force is applied by a user to an open oven door, at the time the range made the basis of this lawsuit was sold, is that often the device is disconnected to clean, to service or to relocate the appliance and then not properly reconnected;

g. A further drawback to the anti-tip devices(s) being supplied by General Electric to reduce or eliminate the risk of a freestanding range tipping when force is applied by a user to an open oven door, at the time the range made the basis of this lawsuit was sold, is that the anti-tip device is often not readily obvious to a user as to whether the device is properly installed and engaged with the appliance when the appliance is in use; and,

h. The above were known deficiencies of the anti-tip device allegedly supplied with freestanding ranges sold by General Electric at the time the range made the basis of this lawsuit was manufactured and sold;

33. General Electric was actually aware at the time the product made the basis of this lawsuit was manufactured and sold:

a. That the oven door handle of the range as designed was, when the door is closed, located at child level such that small children can and will reach for or grab it and open the oven door, placing the oven door in a position such that small

children can exert force upon an open oven door, causing the range to tip;

b. That two motion controls or levers (or child-resistant closures) to prevent or reduce the risk of children being able to open an oven door of a freestanding range by simply pulling down on the oven door handle were economically and technologically feasible at the time the range made the basis of this lawsuit was manufactured and sold, and would not substantially impair the products utility, and would reduce or eliminate small children of the size and age of the Plaintiffs from being able to easily open an oven door, putting the range door in a position such that the child or children's weight could cause the range to tip;

c. That an electrical interlock device could have been used that was economically and technologically feasible at the time the range made the basis of this lawsuit was manufactured and sold that could make it so the range could not operate (electrically energize and heat pots and their contents on the cook top) unless the manufactured anti-tip device, if any, supplied by General Electric was used and properly installed;

d. That industry surveys as well as field observations by GE and others in the appliance industry were documenting a high incidence of non-use of the anti-tip devices supplied with freestanding ranges by GE and other range manufacturers at the time the range made the basis of this lawsuit was manufactured and sold;

e. That major home appliance retailers that sold its ranges including Sears and Lowes would deliver, and hook up freestanding ranges to the power source without installing anti-tip devices supplied;

f. That the cost of compliance with installing an anti-tip bracket at the time the range made the basis of this lawsuit was sold, substantially exceeded the cost to make a range inherently stable (with counterweights, moving the leveling legs forward, changing the size and dimensions of the leveling leg foot, extending stability struts, or using a yielding door either individually or in combination) without the need to use an anti-tip bracket.

34. General Electric, at the time the product made the basis of this lawsuit was manufactured and sold, was actually aware that although range tipping events can happen to anyone, small children and elderly adults are especially vulnerable to accidental range tipping.

35. General Electric had in place, prior to the date the range made the basis of this lawsuit was manufactured, a Laboratory Instruction #250.4 – Range Tipping Force at Edge of Oven Door – to simulate a person stepping onto the edge of the open oven door in order to reach an

object above the range. The stated purpose of the laboratory instruction was "This mainly is to protect small children who do not have the reasoning capacity to realize the hazard of such an act". General Electric was actually aware and expected that in the real world environment of use, prior to the date the range made the basis of this lawsuit was sold, it was foreseeable that the ranges it sold would be subject to a range tipping force when small children exerted force on an open oven door. Despite this, and knowledge that anti-tip brackets it claims to have supplied with ranges it sold would not be used, GE placed into the stream of commerce a range it could reasonably expect would not have an anti-tip bracket installed, subjecting small children (who do not have the reasoning capacity to realize the hazard of opening or climbing onto an open oven door) to an unreasonable risk of injury or death.

36.     Based upon information and belief, General Electric sought to meet the stability requirements of UL 858 that became effective June 3, 1991 by attempting to supply anti-tip brackets with ranges it sold. At the time it did so, it knew with reasonable certainty that many of the ranges it sold would not be installed with anti-tip brackets despite its intent that anti-tip brackets it supplied would be used. It further knew it's on-product warnings and instructions for use it supplied with some of its ranges were not adequately ensuring anti-tip bracket use. It made a deliberate decision to continue to use anti-tip brackets knowing (or which they should have known) they were not going to be used and subjecting the most vulnerable population (children and the elderly) to an unreasonable risk of injury rending the product in question unreasonably dangerous.

37.     The General Electric freestanding electric range, Model J BS03 V1WH, Serial Number MM137503G will not meet the normal use UL range tipping test. The range in question additionally will tip over if with an "s" type hook or other suitable means a 50 lb. weight is

suspended from the outer edge of the open door. As manufactured and sold, it would have been rejected as an unsafe range had this range been subject to historical stability tests. The range was defectively manufactured as well as defectively designed marketed and sold. In fact, General Electric ranges actually got easier to tip – without an anti-tip bracket – due to design choices to only seek to meet minimal UL requirements rather than earlier design standards that were designed to take into account a child placing weight on the edge of an open oven door. General Electric knew, or by the exercise of reasonable care should have known, that, as designed, its ranges, including the range in question, were not adequately designed to address the hazard of two small children of the ages and weights of the children in question placing weight or exerting force on the open door if an anti-tip bracket was not installed. The range could have been designed to address the hazard of two small children placing weight or exerting force to an open oven door without the need to use an anti-tip bracket. It was economically and technologically feasible to do so at the time the product made the basis of this lawsuit was manufactured and sold without substantially impairing the products utility. The failure to do so was a proximate and/or producing cause of the injuries and damages set out below.

38.    These design and/or manufacturing defects created an unreasonably dangerous condition or defective product that rendered the General Electric freestanding electric range, Model J BS03 V1WH, Serial Number MM137503G defective and/or unreasonably dangerous to the ordinary consumer for the use for which it was intended.

39.    These design and/or manufacturing defects were a proximate or producing cause of the injuries suffered by the minors, and parent and natural guardian, to be set out herein below with more particularity.

## NEGLIGENCE AND/OR WANTONNESS OF GENERAL ELECTRIC COMPANY

40.    At all times relevant to the Complaint, the Defendant, GENERAL ELECTRIC COMPANY, was in the business of supplying electric ranges for use in private residences as well as multi-family apartment complexes and held itself out as having a special expertise in the industry.

41.    The Defendant, GENERAL ELECTRIC COMPANY, owed the Plaintiff and minors a duty to use reasonable care in the design, manufacture, preparation, testing, instructing, and warning for the product involved.

42.    The Defendant, GENERAL ELECTRIC COMPANY, violated this duty by supplying the General Electric freestanding electric range, Model J BS03 V1WH, Serial Number MM137503G that was defective by manufacture and/or design and which was defective with regard to inadequate warnings and instructions for use.

43.    The negligent and/or wanton acts of the Defendant, GENERAL ELECTRIC COMPANY. include, but are not limited to, negligent design, negligent manufacturing, negligent testing, negligent marketing, negligent failure to warn, negligent failure to instruct, negligently performing (or failing to perform) surveys of real world use of its ranges that would have shown habitual non-use of anti-tip brackets, negligent failure to recall and/or remedy the defective product, and negligent failure to advise the consuming public of the hazards GE had discovered when it learned its products, in the environment of use were habitually NOT being installed with the necessary safety feature that was required to prevent the serious injury or death to small children and unsuspecting elderly adults who placed weight or exerted force onto an open oven door. This also included the failure of GENERAL ELECTRIC COMPANY to notify purchasers of its ranges that it had discovered by market survey and/or other inquiry (or should have

discovered) that the anti-tip devices it supplied with its freestanding ranges it sold were frequently NOT being properly installed and of the need to re-check to ensure that these critical safety features were being properly used with the ranges.

44.    GENERAL ELECTRIC COMPANY knew at the time the product made the basis of this lawsuit was sold that a drawback of the anti-tip devices it supplied for its freestanding ranges is that often, they are not installed, or if installed, the device may not be installed properly.

45.    GENERAL ELECTRIC COMPANY knew, or by the exercise of reasonable care should have known, at the time the product made the basis of this lawsuit was sold, that if the anti-tip device it provided was installed properly, often the device would not be engaged with the appliance when the appliance was positioned.

46.    GENERAL ELECTRIC COMPANY knew, or by the exercise of reasonable care should have known, at the time the product made the basis of this lawsuit was sold, that often the anti-tip device it supplied with its ranges would be disconnected to clean, service, or relocate the appliance and may not be properly reconnected.

47.    GENERAL ELECTRIC COMPANY knew, or by the exercise of reasonable care should have known, at the time the product made the basis of this lawsuit was sold, that anti-tip devices are often not readily obvious to the user as to whether the device is properly installed and engaged with the appliance when the appliance is in use.

48.    GENERAL ELECTRIC COMPANY either failed to perform proper marketing surveys or negligently performed marketing surveys of its products in the environment of use after the products sold by it began to be supplied with anti-tip devices. Had GENERAL ELECTRIC COMPANY performed prudent surveys or obtained reasonable information known

or reasonably available to it, they would have discovered that the anti-tip devices they were supplying with their ranges were not being used with substantial frequency creating an unreasonable risk of serious injury or death to small children.

49.    Based upon information and belief, General Electric Company claims it included an anti-tip device (bracket) with the range in question when it was sold. General Electric Company acknowledges this bracket is essential to the safe operation of the range. General Electric Company acknowledges that anti-tip brackets it supplies provide protection from range tipping when excess force or weight is applied to an open oven door (such as a child or children placing weight or exerting force to an open oven door) if correctly installed. General Electric Company was actually aware that, prior to the date the range made the basis of this lawsuit was sold, anti-tip device(s) it allegedly supplied with ranges it sold had not been installed or had not been installed correctly. In fact, it discovered that there was a significant lack of compliance in the proper installation and use of anti-devices it supplied with ranges it designed, manufactured, and sold. General Electric had discovered this same situation when it began to supply anti-tip brackets with its 21-inch ranges in late 1969. They stopped using brackets for those ranges when, based upon actual real world experiences, it learned that these necessary safety devices were not being used as they should.

50.    Organizational representatives, who have spoken on behalf of General Electric Company in prior similar incidents where small children or elderly adults were seriously injured or killed by a freestanding range that actually or partially tipped, have conceded General Electric Company became actually aware of frequent non-use or incorrect installation of anti-tip devices it supplied with ranges it designed, manufactured, and sold prior to the date this range was sold. General Electric Company designed, manufactured, and sold freestanding ranges it could

reasonably expect, based upon what was happening in the real world environment of use, that any anti-tip device (bracket) it supplied with its ranges, and were a necessary safety feature essential for the safe operation of the range would not be installed at all, or be installed incorrectly. It also knew that without a properly installed anti-tip bracket if small children placed weight or exerted force to an open oven door the range could tip, causing serious personal injury or death. Both prior to and after this range was sold, General Electric Company has learned that ranges it sold with anti-tip devices were not installed at all, or were installed incorrectly causing death or serious personal injury to small children or elderly adults. Despite the fact it has become actually aware of serious injuries and deaths caused under similar circumstances, it continues to contend that the frequency of serious injuries or death are not sufficient for it to modify its design choice and make a range sufficiently and inherently stable without an anti-tip bracket to prevent small children under the age of 7 from tipping a range over, even if they try. It was both economically and technologically feasible at the time this range was sold to make the range inherently safe – that is unable to be tipped by two small children of the age and weight of the children injured here – without the use of an anti-tip bracket.

51.    On or about August of 1996 Frank Thomasino, an agent servant and employee of General Electric Company, acting in the course and scope of his employment, communicated to Kathy Goodwin (a buyer from Sears) that less than 5%, more like 3-4% was the percentage of installation of brackets provided with GE ranges. He further confirmed that the prior Fall, in 1995, he and Mike Rowland of Sears, had a conversation where it was discussed 2-3% was a closer number of the percentage of ranges that have anti-tip brackets installed on ranges sold by Sears. General Electric was actually aware, or should have known, at the time the range made the basis of this lawsuit was manufactured and sold, that it was highly probable, based upon what

was being seen in the real world environment of use by its own employees, that anti-tip brackets allegedly supplied with GE ranges would not be installed, subjecting small children like the children in this case to an unreasonable risk of serious injury or death.

52.    GENERAL ELECTRIC COMPANY knew, at the time the product made the basis of this lawsuit was sold by it, that anti-tip devices it supplied with its ranges were not being used and that the ranges it sold that did not have an anti-tip device properly installed could not meet UL 858, abnormal use, stability requirements implemented to seek to address the hazard of multiple children placing weight or exerting force upon an open oven door without a properly installed anti-tip device.

53.    GENERAL ELECTRIC COMPANY, despite its knowledge regarding the frequent non-use of safety features (anti-tip brackets or similar anti-tip devices) it supplied with its freestanding and slide-in electric ranges, and despite its knowledge that said safety features were necessary to prevent serious injury or death to small children, failed to incorporate an electrical interlock device to ensure that the range cook top and oven could not be energized absent the proper installation of the safety features that would prevent these types of tragedies if properly installed.  Such an electrical interlock device was an alternative design that was economically and technologically feasible at the time the product was sold, would not substantially impair the products utility and would have prevented the burn injuries to the minor children in this matter.

54.    GENERAL ELECTRIC COMPANY knew, or by the exercise of reasonable care should have known, that anti-tip brackets were not being properly installed and yet deliberately and consciously chose not to take any action, by design choice, to make the range made the basis of this lawsuit inherently more stable (without need to install anti-tip brackets if it chose not to incorporate an electrical interlock device) by the use of counterweights, movement of the

leveling legs forward (changing the fulcrum point), and/or implementing an alternative hinge and breakaway door design, either individually or in concert with one another, to ensure that a freestanding gas or electric range remained stable if small children placed weight or exerted force on an open oven door. Such alternative designs were economically and technologically feasible at the time the product was sold, would not substantially impair the products utility and would have prevented the burn injuries to the minor children.

55.     These acts of negligence and/or wantonness of the Defendant, GENERAL ELECTRIC COMPANY, combined as a proximate and producing cause of the minors' injuries and damages to be set out herein with more particularity and the damages to the parent and natural guardian.

### GENERAL ELECTRIC COMPANY'S BREACH OF WARRANTY

56.     At all times relevant to the Complaint, the Defendant, GENERAL ELECTRIC COMPANY, was a merchant in the business of supplying goods for purchase and use by consumers, including the Plaintiffs.

57.     The General Electric freestanding electric range Model J BS03 V1WH, Serial Number MM137503G is considered a good and/or product sold for consumer usage.

58.     The Defendant, GENERAL ELECTRIC COMPANY, breached the warranties of merchantability and fitness for a particular purpose in that the General Electric freestanding electric range, Model J BS03 V1WH, Serial Number MM137503G was not fit for ordinary use or for the intended use for which it was purchased.

59.     These breaches of warranty proximately caused or produced the injuries and damages to be set out herein with more particularity.

## INJURIES AND DAMAGES

60.    As a direct and proximate result of one, some or all of the aforesaid acts and/or omissions of the Defendant, as stated above, Plaintiff, NATHAN THARP, has been caused to sustain and suffer severe personal injuries and damages which include, but are not limited to, the following:

a.    First, second and third degree burns over much of his body;

b.    Physical pain and suffering encompassing the physical discomfort caused by the injury;

c.    Mental or emotional pain and suffering encompassing anguish, distress, fear, humiliation, grief, shame and worry caused by the injuries;

d.    Loss of the capacity for the enjoyment of life including the normal pleasures of life;

e.    Physical impairment other than the ability to earn money;

f.    Disfigurement;

g.    Reasonable and necessary expense for medical care, services and supplies including, but not limited to expenses for doctors, nurses, physical therapists, hospital personnel, medications, and garments; and

h.    Earning capacity lost after the minor turns 18.

61.    Plaintiff, AMANDA THARP, parent and natural guardian of NATHAN THARP, further avers that she has incurred, or will incur in the future, reasonable and necessary expense for medical care, services, and supplies up to the child's majority, including, but not limited to expenses for doctors, nurses, physical therapists, hospital personnel, medications and garments as well as travel expenses in an effort to treat her son for the serious injuries which he has

incurred; and that he will incur additional medical expense in the future.

62.    As a direct and proximate result of one, some or all of the aforesaid acts and/or omissions of the Defendant, as stated above, Plaintiff, PATRICK THARP, has been caused to sustain and suffer severe personal injuries and damages which include, but are not limited to, the following:

    a.    First, second and third degree burns over much of his body;

    b.    Physical pain and suffering encompassing the physical discomfort caused by the injury;

    c.    Mental or emotional pain and suffering encompassing anguish, distress, fear, humiliation, grief, shame and worry caused by the injuries;

    d.    Loss of the capacity for the enjoyment of life including the normal pleasures of life;

    e.    Physical impairment other than the ability to earn money;

    f.    Disfigurement;

    g.    Reasonable and necessary expense for medical care, services and supplies including, but not limited to expenses for doctors, nurses, physical therapists, hospital personnel, medications, and garments; and

    h.    Earning capacity lost after the minor turns 18.

63.    Plaintiff, AMANDA THARP, parent and natural guardian of PATRICK THARP further avers that she has incurred, or will incur in the future, reasonable and necessary expense for medical care, services, and supplies up to the child's majority, including, but not limited to expenses for doctors, nurses, physical therapists, hospital personnel, medications and garments as well as travel expenses in an effort to treat her son for the serious injuries which he has

incurred; and that she will incur additional medical expense in the future.

64.  Plaintiff further avers that the conduct of the Defendant as set out in this Complaint is such as to merit the recovery of punitive damages in an amount sufficient to punish the Defendant for its wrongdoings and to deter the Defendant and other manufacturers like Defendant from similar conduct in the future.

65.  Plaintiff avers that all of the wrongs, injuries, losses, expenses and damages incurred are directly and proximately caused by the actions or failures of the Defendant as are set out in the Complaint above.

WHEREFORE the Plaintiff, AMANDA THARP, as natural guardian of NATHAN THARP and PATRICK THARP, minors, demands compensatory damages from the Defendant in an amount greatly in excess of the minimum jurisdictional limits of this Court. Plaintiff further demands punitive damages from the Defendant in an amount to be determined by a fair and impartial jury. Finally, Plaintiff demands prejudgment and post-judgment interest, costs, and other compensation as determined by the Court.

PLAINTIFF DEMANDS A TRIAL BY JURY.

AMANDA THARP

By Counsel

Bruce L. Freeman (WV State Bar ID#1291)
FREEMAN & CHIARTAS
Post Office Box 347
Charleston, West Virginia 25322
304/342-4508





EXHIBIT

_B_